*Barron v. Helbiz, Inc.*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of October, two thousand twenty-one.

Present:
>	DEBRA ANN LIVINGSTON,
>		*Chief Judge*,
>	DENNY CHIN,
>	WILLIAM J. NARDINI
>		*Circuit Judges*.

_____

RYAN BARRON, for themselves and a class of others similarly situated, FILIPPO BULGARINI D'ELCI, for themselves and a class of others similarly situated, DENIS DESARI, for themselves and a class of others similarly situated, MARAT GARIBYAN, for themselves and a class of others similarly situated, ILLIA CHEHERST, for themselves and a class of others similarly situated, RISHI KHANCHANDANI, for themselves and a class of others similarly situated, DANIILS LEBEDEUS, for themselves and a class of others similarly situated, DONG SEOK LEE, for themselves and a class of others similarly situated, TAREK RAHMAN, for themselves and a class of others similarly situated, AND ABHISHEK SIKARIA, for themselves and a class of others similarly situated,

>		*Plaintiffs-Appellants*,

>	v.                                                              21-278

HELBIZ, INC., SALVATORE PALELLA, NETELLER (US) INC., SKRILL USA INC., LORENZO PELLEGRINO, JONATHAN HANNESTAD, STEFANO CIRAVEGNA, MICHAEL COPPOLA, GIULIO PROFUMO, JUSTIN GUILIANO, AND SAEED ALDARMAKI,

*Defendants-Appellees*,

MILOS CITOVEK,

*Defendant.*

_____

For Plaintiffs-Appellants:  MICHAEL KANOVITZ, Loevy & Loevy, Chicago, IL.

For Defendants-Appellees:  ROBERT G. HEIM, Tarter Krinsky & Drogin LLP, New York, NY; WILLIAM FRANCIS DAHILL AND SAMUEL A. BLAUSTEIN, Dunnington, Bartholow & Miller LLP, New York, NY; Adam M. Bialek and Philip Ransom Schatz, Wollmuth Maher & Deutsch LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Stanton, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED**, and the case is **REMANDED** to the district court.

Plaintiffs-Appellants Ryan Barron, Filippo Bulgarini d'Elci, Denis Desari, Marat Garibyan, Illia Cheherst, Rishi Khanchandani, Daniils Lebedeus, Dong Seok Lee, Tarek Rahman, and Abhishek Sikaria (collectively, "Plaintiffs"), for themselves and a class of others similarly situated, appeal the district court's January 22, 2021 order dismissing their complaint. Plaintiffs sued Helbiz, Inc., Salvatore Palella, Neteller (US) Inc., Skrill USA Inc., Lorenzo Pellegrino, Jonathan Hannestad, Stefano Ciravegna, Michael Coppola, Giulio Profumo, Justin Guiliano, and Saeed Aldarmaki (collectively, "Defendants"), alleging Defendants participated in a

cryptocurrency "pump and dump" scheme and broke various promises to them. On appeal, Plaintiffs argue that the district court erred by applying *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010), to dismiss their claims. They also assert that the district court abused its discretion by not permitting them to amend their complaint to plead additional facts about domestic sales and purchases of HelbizCoin, among other things. For the reasons stated below, we agree. We assume the reader's familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

### 1. Factual and Procedural Background[1]

Plaintiffs are purchasers of HelbizCoin, a cryptocurrency that Plaintiffs allege was created, marketed, issued and controlled by Helbiz (a Delaware corporation) and Salvatore Palella, its CEO. Plaintiffs allege, among other things, that Helbiz and Palella promised that HelbizCoin would be the exclusive currency of a smartphone-based transportation rental platform to be developed by Helbiz. Helbiz and Palella marketed the platform as the solution to various intra-urban transportation issues, allowing users to rent everything from flying drone taxis to cars, bikes, and scooters to travel within cities. To fund the development of the platform, Helbiz and Palella planned an initial coin offering ("ICO"), whereby investors could purchase HelbizCoin. Helbiz and Palella announced in a whitepaper for HelbizCoin that Helbiz would use the sale proceeds from the ICO to build its platform and market it to potential users. As the platform's exclusive currency, users would have to purchase HelbizCoin to pay for rentals, causing the price of HelbizCoin to rise as more users purchased the coin to access the platform.

---

[1] The factual background is derived from Plaintiffs' complaint, which is accepted as true and read in the light most favorable to Plaintiffs in considering the motion to dismiss. *See Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012).

3

The ICO occurred in two phases—a "pre-sale" in January 2018, and a "crowd sale" in February through March 2018. Helbiz and Palella issued about one billion HelbizCoins, selling about half to the public, and retaining half for Helbiz and its founders, employees, affiliates, and backers. On average, investors paid $0.15 per HelbizCoin for the 520 million HelbizCoins they received, making each of the roughly one billion coins worth about $0.04 on a fully diluted basis. Altogether, Helbiz and Palella raised $38.6 million in the ICO's two phases.

After the ICO, however, Helbiz and Palella reneged on a number of the promises made in the whitepaper, including the promise to use HelbizCoin as the platform's exclusive currency. Plaintiffs further allege that Helbiz and Palella kept the money raised in the ICO for themselves instead of using the funds to build the rental platform. Together, this caused the price of HelbizCoin to plummet, reaching as low as $0.0008 in January 2019.

In 2020, in connection with Helbiz's planned initial public offering, Helbiz and Palella announced that HelbizCoin would be destroyed and delisted from cryptocurrency exchanges. Those who purchased HelbizCoin during the ICO would be refunded their purchase price in Ethereum, a separate cryptocurrency. According to Plaintiffs, however, the offer to fully refund purchasers was a sham because most ICO purchasers had already sold their HelbizCoin, seeking to cut their losses as the price of the coin plummeted. Investors who purchased HelbizCoin on the secondary market after the ICO would be offered approximately $0.0002 in Ethereum.

Plaintiffs also allege that Neteller (US) Inc. and Skrill USA Inc. (internet-based payment money transferors and partners with Helbiz); Lorenzo Pellegrino (former CEO of Neteller and Skrill); Saeed Aldarmaki (partner with Helbiz); and Jonathan Hannestad, Stefano Ciravegna, Michael Coppola, Giulio Profumo, and Justin Guiliano (individuals named in the HelbizCoin

4

whitepaper) each joined a conspiracy with Helbiz and Palella to fraudulently market HelbizCoin and breach promises made to Plaintiffs.

Based on these allegations, Plaintiffs brought common law claims sounding in breach of contract, trespass and conversion of chattels, constructive trust, quiet title, and spoilation, and state statutory claims under section 20-701 of the New York City Administrative Code and section 349 of the New York General Business Law.

The district court, *sua sponte*, requested briefing from the parties to address whether Plaintiffs' complaint was subject to dismissal under *Morrison*. Attached to a separately filed motion to dismiss, Defendants included an affidavit and the ICO's purported Terms and Conditions, apparently showing that HelbizCoin was created and issued abroad by a Singaporean third party unaffiliated with Helbiz, and that U.S. citizens were prohibited from purchasing HelbizCoin. After briefing by the parties, the district court dismissed Plaintiffs' complaint. Analyzing the claims under *Morrison*, the district court concluded that because the case involved neither securities listed on a domestic exchange nor domestic purchases of securities, Plaintiffs failed to state a claim.

**2.    Discussion**

This Court reviews the district court's dismissal under Rule 12(b)(6) *de novo*, "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 483–84 (2d Cir. 2011); *see* Fed. R. Civ. P. 12(b)(6). On appeal, Plaintiffs argue that the district court erred by applying *Morrison* to their state law claims. We agree.

In *Morrison*, the Supreme Court held that Section 10(b) of the Securities Exchange Act "reaches the use of a manipulative or deceptive device or contrivance only in connection with the

5

purchase or sale of a security listed on an American stock exchange, and the purchase or sale of any other security in the United States." 561 U.S. at 273; *see* 15 U.S.C. § 78j(b). The Supreme Court grounded this holding in a canon of statutory construction known as the presumption against extraterritoriality—"absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application." *RJR Nabisco, Inc. v. Eur. Cmty.*, 136 S.Ct. 2090, 2100 (2016). In *Morrison*, the petitioners failed to show that the securities at issue were listed on a domestic exchange or that the relevant purchases or sales occurred within the U.S. 561 U.S. at 273. As such, the Court affirmed the dismissal of the petitioners' complaint for failing to state a claim on which relief could be granted. *Id.*; *see* Fed. R. Civ. P. 12(b)(6).

The *Morrison* Court, in analyzing the federal securities claim at issue there, did not assert that its analysis applied to claims that are not brought under Section 10(b) of the Securities Exchange Act, such as the state law claims made here. Defendants assert that the district court's application of *Morrison* was appropriate because, though labeled as state law claims, all of Plaintiffs' claims are substantively federal securities claims for fraud brought under Section 10(b).[2] But this is not a fair reading of the complaint. Viewed most favorably to Plaintiffs, the complaint alleges that Defendants made certain promises that induced the Plaintiffs to purchase HelbizCoin, and regardless whether those promises were known to the Defendants to be false at the time they were made, Defendants ultimately did not fulfill them. *See Gaidon v. Guardian Life Ins. Co. of Am.*, 725 N.E.2d 598, 606 (N.Y. 1999) ("A practice may carry the capacity to mislead or deceive a reasonable person but not be fraudulent."); *see also Hutchison*, 647 F.3d at 483–84. While Plaintiffs' various claims might eventually fail for lacking adequate domesticity, that

---

[2] It is unclear if the district court took this approach, as the court did not state why it applied *Morrison* to claims arising under New York law.

determination must be made pursuant to a more tailored approach that analyzes any Section 10(b) claims[3] under *Morrison*, and separately, any state law claims under New York's rules for the extraterritorial application of its law. *Cf. Glob. Reinsurance Corp.–U.S. Branch v. Equitas Ltd.*, 969 N.E.2d 187, 195 (N.Y. 2012) ("The established presumption is, of course, against the extraterritorial operation of New York law, and we do not see how it could be overcome in a situation where the analogue federal claim would be barred by congressional enactment." (citation omitted)).

Plaintiffs also argue that the district court abused its discretion by not granting them leave to amend their complaint to, among other things, add factual allegations regarding the citizenship of plaintiff Ryan Barron (a purported U.S. citizen who purchased HelbizCoin domestically), to clarify the domesticity of the ICO and purchases of HelbizCoin, and to make a separate federal securities claim under Section 10(b). *See Hutchison*, 647 F.3d at 490 ("We review denial of leave to amend under an abuse of discretion standard." (internal quotation marks omitted)). Once again, we agree.

Under Rule 15 of the Federal Rules of Civil Procedure, a "court should freely give leave [to amend the complaint] when justice so requires." *Absolute Activist*, 677 F.3d at 71 (alteration in original) (quoting Fed. R. Civ. P. 15(a)(2)). Rule 15's "permissive standard" is "consistent with our strong preference for resolving disputes on the merits." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (internal quotation marks omitted). We have been "particularly skeptical of denials of requests to amend when a plaintiff did not previously have a district court's ruling on a relevant issue" because "[w]ithout the benefit of a

---

[3] As discussed below, Plaintiffs have represented that they would, if permitted, amend their complaint to clearly include federal securities law claims.

ruling, many a plaintiff will not see the necessity of amendment or be in a position to weigh the practicality and possible means of curing specific deficiencies." *Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (alteration in original) (quoting *Loreley*, 797 F.3d at 190).

Defendants argue that Plaintiffs should not be permitted to amend their complaint because they never formally moved to amend before the district court. True, Plaintiffs did not file a motion to amend their complaint below. They did, however, repeatedly note in their briefing to the district court that they were willing to amend to make specific changes to the complaint to prevent dismissal, such as by pleading plaintiff Barron's Texas citizenship.[4] Plaintiffs' failure to formally move for amendment is not a sufficient ground to prohibit them from amending now. *See Loreley*, 797 F.3d at 190 ("Generally, we will not deem a request for leave to amend insufficient on the basis of form alone."); *Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("[W]here a plaintiff clearly has expressed a desire to amend, a lack of a formal motion is not a sufficient ground for a district court to dismiss without leave to amend.").

Defendants also argue that Plaintiffs should not be allowed to amend because any amendment would be futile. *See Absolute Activist*, 677 F.3d at 71 ("[A] request to replead should be denied in the event that amendment would be futile."). Based on their filed affidavit and the ICO's purported Terms and Conditions, they assert that HelbizCoin was issued abroad by a third-party entity and that there were no domestic purchasers of HelbizCoin. They claim that Plaintiffs

---

[4] Amendment might well be necessary to establish diversity jurisdiction under the Class Action Fairness Act ("CAFA") in the event Plaintiffs amend their complaint to add a federal securities claim which is ultimately dismissed. Under CAFA, the district court has original jurisdiction over any class action in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2), (A). Currently, the complaint does not plead Plaintiffs' citizenship, only stating that diversity of citizenship exists.

8

are thus incapable of pleading subject matter jurisdiction and sufficient domesticity under federal and state law.

We cannot conclude that amendment is futile. Plaintiffs have represented that they will amend to plead that a named plaintiff is a citizen of Texas who purchased HelbizCoin domestically, allege additional facts concerning the domesticity of the ICO and purchases of HelbizCoin, and expressly make a Section 10(b) fraud claim. *See id.* ("[W]e cannot conclude that amendment would be futile given the [plaintiffs'] representations made both in their briefs and at oral argument that additional facts could be alleged to show that the transactions were domestic." (alterations added)). Such amendments could cure potential jurisdictional defects or federal and state law extraterritorial concerns.

Further, it was error for the district court to consider Defendants' affidavit and the Terms and Conditions in concluding that Plaintiffs' complaint was subject to dismissal under Rule 12(b)(6). *See Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) ("[A] Rule 12(b)(6) motion is addressed to the face of the pleading."). While the court may consider, on a motion to dismiss for failure to state a claim, an exhibit filed by a defendant that is "integral" to the complaint, the affidavit and Terms and Conditions here do not meet that prerequisite. The complaint did not mention these documents, and Plaintiffs assert in briefings and declarations that at least one plaintiff was never asked to consent to the Terms and Conditions when purchasing HelbizCoin. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230–31 (2d Cir. 2016) (noting that courts may rely on an unincorporated document "where the complaint relies heavily upon its terms and effect, thereby rendering the document integral to the complaint. A necessary prerequisite . . . is that the plaintiff *rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." (emphasis in original) (internal quotation marks and citations omitted)).

The district court erred in relying on these documents and viewing them most favorably to Defendants.

* * *

We have considered Defendants' remaining arguments and find them to be without merit. Accordingly, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk